

**SHERRI R. CARTER**
District Court Executive and
Clerk of Court

February 29, 2008

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
WESTERN DIVISION
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

# FILED

MAR 1 0 2008   NR

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

Everett McKinley Dirksen
 United States Courthouse, 20th floor
219 South Dearborn Street
Chicago, IL 60604

Re:   Transfer of our Civil Case No. _____ CV 07-8306 GHK(AJWx) _____

Case Title: Aurora Corp. of America v. Fellowes, Inc.

Dear Sir/Madam:

An order having been made transferring the above-numbered case to your district, we are transmitting herewith our entire original file in the action, together with certified copies of the order and the docket.  Please acknowledge receipt of same and indicate below the case number you have assigned to this matter on the enclosed copy of this letter and return it to our office.  Thank you for your cooperation.

Note: You may access this database at our website: http://ecf.cacd.uscourts.gov.  Please use you Court's Pacer account and password to access this document.

Very truly yours,

Clerk, U.S. District Court

**08CV1402**
**JUDGE LEINENWEBER**
**MAGISTRATE JUDGE VALDEZ**

By _____
   Deputy Clerk

cc:   All counsel of record

## TO BE COMPLETED BY RECEIVING DISTRICT

Receipt is acknowledged of the documents described herein and we have assigned this matter case number CV: _____ .

Clerk, U.S. District Court

By _____
   Deputy Clerk

**F I L E D**

MAR 1 0 2008    NR

CHAEL W. DOBBINS
, U.S. DISTRICT COURT

08CV1402
JUDGE LEINENWEBER
MAGISTRATE JUDGE VALDEZ

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-8306-GHK (AJWx) | Date | February 27, 2008 |
|---|---|---|---|

| Title | **Aurora Corp. of America v. Fellowes, Inc.** |
|---|---|

Presiding: The Honorable    **GEORGE H. KING, U. S. DISTRICT JUDGE**

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| (none) | (none) |

**Proceedings:    (In Chambers) Order Transferring Action**

This matter is before the Court on Defendant Fellowes, Inc.'s ("Fellowes") Motion to Dismiss, Transfer, or Stay or, Alternatively, For A More Definite Statement ("Motion"). We have considered the papers filed in support of and in opposition to this Motion, and deem this matter appropriate for resolution without oral argument. L.R. 7-15.

Fellowes has moved to dismiss, stay, or transfer this action for declaratory relief, filed on December 26, 2007 by Plaintiff Aurora Corp. of America ("Aurora America"), to the Northern District of Illinois. An infringement suit is pending in that district, filed by Fellowes later in the day on December 26, 2007 against Aurora America as well as Aurora Office Equipment, Ltd. ("Aurora China"). Patent No. 7,311,276 ("the '276 Patent"), one of the subjects of the parties' dispute, was issued the day before, on December 25, 2007, by the United States Patent and Trademark Office, thereby prompting the competing filings.

**I.    Discussion**

Aurora argues that this action must be granted preference under the first-filed rule. The Supreme Court dealt with this issue in *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952). There, as here, the Court was confronted with concurrent litigation of a patent dispute in different states by competing actions for infringement and declaratory relief. The Court said that "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems."

Subsequent cases have clarified the factors a court considers in deciding which of multiple, competing patent actions should proceed. Both the Ninth Circuit and the Federal Circuit resolve the issue in a similar fashion, by giving due consideration to such factors as convenience, judicial economy, and the need to include all parties and all issues in a single action. *See Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (abrogated on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)); *see also Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95–96 (9th Cir.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-8306-GHK (AJWx) | Date | February 27, 2008 |
|---|---|---|---|

| Title | **Aurora Corp. of America v. Fellowes, Inc.** |
|---|---|

1982). Both *Pacesetter*, 678 F.2d at 95, and *Genentech*, 998 F.2d at 938, have also suggested that some weight may be given in favor of the infringement action.

The first-filed rule is a useful tool for conserving judicial resources, as it tips the scales in favor of the action in which more efforts have been expended and more progress made, while dissuading parties from using the threat of suit as a tool of harassment. Though it is an acknowledged risk of the rule, the first-filed rule is not intended to create a race to the courthouse. *See, e.g., Hypro, Inc. v. Seeger-Wanner Corp.*, 292 F.Supp. 342 (D. Minn. 1968). Application of the first-filed rule here, where the parties filed nearly simultaneous actions in competing jurisdictions the first day that courts were open after the '276 Patent was issued, would invoke none of the merits of the first-filed rule, while promoting the sort of race to the courthouse that is the worst feature of the rule. We note that other courts, in other contexts, have concluded that the first-filed rule is of no utility where competing cases are filed within a short interval of one another. *See, e.g., Mobil Oil Exploration Co. v. Fed. Energy Regulatory Comm'n*, 814 F.2d 998 (5th Cir. 1987) (cases filed less than a second apart); *see also Ashe v. Pepsico, Inc.*, 443 F.Supp. 84 (S.D.N.Y. 1977) (cases filed on the same day). We follow *Kerotest* in declining to apply a "rigid mechanical solution," and therefore conclude that the first-filed rule is of limited value in resolving the dispute here.

All the other factors considered in *Pacesetter* and *Genentech* weigh in favor of the Illinois action. All the relevant parties, including Aurora China, are already present in that action. That action will also resolve the possible infringement of Patent No. 7,040,559 ("the '559 Patent"), also owned by Fellowes and allegedly infringed by Aurora America and Aurora China. Meanwhile, Aurora America has made no showing that it will be significantly inconvenienced if it is forced to litigate in the Northern District of Illinois, making the dubious claim that numerous Chinese witnesses will suffer greater inconvenience in traveling to Chicago than Los Angeles, despite the fact that direct flights are available from China to both cities, and that the difference in flight times to the two destinations is *de minimis*. As we conclude that Fellowes has adequately established an exception to the first-filed rule, even were the rule technically applicable here, we accordingly transfer this action to the Northern District of Illinois, where Fellowes's action against Aurora America and Aurora China is now pending.[1]

**II.      Conclusion**

In light of the foregoing, we need not reach other issues addressed in the motion. The Motion is, therefore, **GRANTED**. This action is hereby **TRANSFERRED** to the United States District Court for the Northern District of Illinois. The clerk shall effect such transfer forthwith.

**IT IS SO ORDERED.**

---

[1]In light of this disposition, we need not reach the alternative request for transfer under 28 U.S.C. § 1404.

**JS-6**

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.    CV 07-8306-GHK (AJWx)                     Date    February 27, 2008

Title       **Aurora Corp. of America v. Fellowes, Inc.**

Initials of Preparer _____ Bea _____



(AJWx), AO120, CLOSED, DISCOVERY, TRANSFERRED

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:07-cv-08306-GHK-AJW

Aurora Corp. Of America v. Fellowes, Inc.
Assigned to: Judge George H. King
Referred to: Magistrate Judge Andrew J. Wistrich
Cause: 28:1338 Patent Infringement

Date Filed: 12/26/2007
Date Terminated: 02/27/2008
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Aurora Corp. Of America**
*a Delaware corporation*

represented by **Erick P Wolf**
Wang Hartmann Gibbs & Cauley P.C.
1301 Dove Street Suite 1050
Newport Beach, CA 92660
949-833-8483
Email: ewolf@jcpw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**FILED**

MAR 1 0 2008 NH

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

08CV1402
JUDGE LEINENWEBER
MAGISTRATE JUDGE VALDEZ

**Franklin Eugene Gibbs**
Wang Hartmann Gibbs & Cauley PC
1301 Dove Street Suite 1050
Newport Beach, CA 92660
949-833-8483
Email: fgibbs@whglawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard F Cauley**
Wang Hartmann Gibbs & Cauley, P.C.
1301 Dove Street Suite 1050
Newport Beach, CA 92660
949-833-8483
Email: rcauley@whglawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Fellowes, Inc.**
*an Illinois corporation*

represented by **Evan Finkel**
Pillsbury Winthrop Shaw Pittman
725 S Figueroa St Ste 2800
Los Angeles, CA 90017-5406

213-488-7100
Email: evan.finkel@pillsburylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William P Atkins**
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Boulevard
McLean, VI 22102
703-770-7900
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/26/2007 | 1 | COMPLAINT against Defendant Fellowes, Inc. (Filing fee $ 350 PAID.) Jury Demanded., filed by Plaintiff Aurora Corp. Of America. (et) Additional attachment(s) added on 12/31/2007 (et, ). (Entered: 12/31/2007) |
| 12/26/2007 | | 20 DAY Summons Issued re Complaint - (Discovery) 1 as to Defendant Fellowes, Inc. (et) (Entered: 12/31/2007) |
| 12/26/2007 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff Aurora Corp. Of America. (et) Additional attachment(s) added on 12/31/2007 (et, ). (Entered: 12/31/2007) |
| 12/26/2007 | 3 | REPORT ON THE FILING OF AN ACTION Regarding a Patent or a Trademark (Initial Notification) filed by Aurora Corp. Of America. (et) (Entered: 12/31/2007) |
| 12/26/2007 | | FAX number for Attorney Richard F Cauley, Franklin E Gibbs, Erick P Wolf is 949-833-2281. (et) (Entered: 12/31/2007) |
| 12/28/2007 | 4 | ORDER RE CASE MANAGEMENT (REVISED AS OF OCTOBER, 2007) READ IMMEDIATELY by Judge George H. King, (es) (Entered: 01/02/2008) |
| 01/11/2008 | 5 | PROOF OF SERVICE Executed by Plaintiff Aurora Corp. Of America, upon Fellowes, Inc. served on 12/31/2007, answer due 1/20/2008. The Summons and Complaint were served by Personal Service service, by California Code of Civil Procedure statute, upon Jessica Chavez, Person Authorized to Receive. Due Dilligence declaration not atttached. Original Summons not returned. (Gibbs, Franklin) (Entered: 01/11/2008) |
| 01/22/2008 | 6 | NOTICE OF MOTION AND MOTION to Dismiss Case *Transfer, or Stay This Lawsuit or, Alternatively, for a More Definite Statement* filed by Defendant Fellowes, Inc..Motion set for hearing on 2/25/2008 at 09:30 AM before Judge George H. King. (Finkel, Evan) (Entered: 01/22/2008) |
| 01/22/2008 | 7 | MEMORANDUM in Support of MOTION to Dismiss Case *Transfer, or* |

| | | |
|---|---|---|
| | | *Stay This Lawsuit or, Alternatively, for a More Definite Statement*6 filed by Defendant Fellowes, Inc.. (Attachments: # 1 Exhibit Exhibit A# 2 Exhibit Exhibit B - Part 1# 3 Exhibit Exhibit B - Part 2# 4 Exhibit Exhibit C)(Finkel, Evan) (Entered: 01/22/2008) |
| 01/22/2008 | 8 | Certificate of Interested Parties filed by Defendant Fellowes, Inc.. (Finkel, Evan) (Entered: 01/22/2008) |
| 01/25/2008 | 9 | NOTICE of Errata Re Defendant's Memorandum in Support of its Motion to Dismiss, Transfer, or Stay This Lawsuit or, Alternatively, for a more Definite Statement filed by Defendant Fellowes, Inc.. (Finkel, Evan) (Entered: 01/25/2008) |
| 01/31/2008 | 10 | Amended Certification and Notice of Interested Parties filed by Plaintiff Aurora Corp. Of America. (Gibbs, Franklin) (Entered: 01/31/2008) |
| 02/11/2008 | 11 | OPPOSITION to MOTION to Dismiss Case *Transfer, or Stay This Lawsuit or, Alternatively, for a More Definite Statement*6 filed by Plaintiff Aurora Corp. Of America. (Attachments: # 1 Declaration of Linda Chen in Support of Aurora's Opposition to Defendant's Motion to Dismiss, Transfer or Stay)(Gibbs, Franklin) (Entered: 02/11/2008) |
| 02/11/2008 | 12 | APPLICATION OF NON-RESIDENT ATTORNEY William P. Atkins for Leave to Appear In A Specific Case. FEE PAID. filed by defendant Fellowes, Inc.. (es) (Entered: 02/12/2008) |
| 02/13/2008 | 13 | NOTICE of Change of Address by Franklin E Gibbs attorney for Plaintiff Aurora Corp. Of America, changing firm name to Wang, Hartmann, Gibbs & Cauley, P.C.. Filed by plaintiff Aurora Corp. of America (Gibbs, Franklin) (Entered: 02/13/2008) |
| 02/14/2008 | 14 | ORDER by Judge George H. King, On APPLICATION OF NON-RESIDENT ATTORNEY William P. Atkins for Leave to Appear In A Specific Case. FEE PAID.12 (es) (Entered: 02/15/2008) |
| 02/15/2008 | 15 | REPLY in support of a motion MOTION to Dismiss Case *Transfer, or Stay This Lawsuit or, Alternatively, for a More Definite Statement*6 filed by Defendant Fellowes, Inc.. (Attachments: # 1 Exhibit Exhibits A-C) (Finkel, Evan) (Entered: 02/15/2008) |
| 02/21/2008 | 16 | MINUTES OF IN CHAMBERS ORDER held before Judge George H. King : re: MOTION to Dismiss Case Transfer, or Stay This Lawsuit or, Alternatively, for a More Definite Statement6;On the court's own motion, this matter, noticed for hearing on February 25, 2008 at 9:30 a.m., is taken off calendar and will be taken under submission without oral argument on that date. F.R.Civ.P. 78; Local Rule 7-15 (formerly 7.11). No appearance by counsel shall be necessary. The hearing date is vacated. Further briefing, if any, shall be filed in accordance with Local Rules as if the noticed hearing date had not been vacated.IT IS SO ORDERED.. (ab) (Entered: 02/21/2008) |
| 02/27/2008 | 17 | MINUTES OF IN CHAMBERS ORDER TRANSFERRING ACTION held before Judge George H. King : This matter is before the Court on |

Defendant Fellowes, Inc.s (Fellowes) Motion to Dismiss, Transfer, or Stay or, Alternatively, For A More Definite Statement (Motion). We have considered the papers filed in support of and in opposition to this Motion, and deem this matter appropriate forresolution without oral argument. L.R. 7-15. 6 In light of the foregoing, we need not reach other issues addressed in the motion. The Motion is,therefore, GRANTED. This action is hereby TRANSFERRED to the United States District Court for the Northern District of Illinois. The clerk shall effect such transfer forthwith. (SEE ATTACHED DOCUMENT FOR FURTHER DETAILS)IT IS SO ORDERED. (Made JS-6. Case Terminated.) (es) (Entered: 02/29/2008)

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/29/2008 09:03:00 | | |
| PACER Login: | us3877 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:07-cv-08306-GHK-AJW |
| Billable Pages: | 3 | Cost: | 0.24 |



**WANG, HARTMANN & GIBBS, P.C.**
A Professional Law Corporation
Richard F. Cauley (SBN: 109194)
Franklin E. Gibbs (SBN: 189015)
Erick P. Wolf (SBN: 224906)
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Telephone: (949) 833-8483
Facsimile: (949) 833-2281

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AURORA CORP. OF AMERICA, a Delaware corporation,<br><br>                           Plaintiff,<br><br>vs.<br><br>FELLOWES, INC., an Illinois corporation,<br><br>                           Defendant. | Case No.  CV07-8306 GHK (AJWx)<br><br>COMPLAINT FOR:<br><br>1. DECLARATORY JUDGMENT OF NON-INFRINGEMENT; AND<br>2. DECLARATORY JUDGMENT OF INVALIDITY;<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Aurora Corp. of America ("Aurora"), for its complaint against Defendants Fellowes, Inc. ("Fellowes"), states as follows:

## NATURE OF THE ACTION

1.     This is an action for declaratory relief regarding invalidity and non-infringement of U.S. Patent No. 7,311,276 ("the '276 Patent"), a true and correct copy of which is attached as Exhibit 1, to this Complaint.

## **PARTIES**

2.     Plaintiff Aurora is a Delaware corporation with a principal place of business at 3500 Challenger Street, Torrance, CA 90503.

3.     Defendant Fellowes is an Illinois corporation with a principal place of business at 1789 Norwood Ave., Itasca, IL 60143.

## **JURISDICTION AND VENUE**

4.     This action seeks declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and under the Patent Laws of the United States, including 35 U.S.C. § 1 et seq.  It presents an actual case or controversy under Article III of the United States Constitution and serves a useful purpose in clarifying and settling the legal rights at issue.

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. Sections 1331 and 1338(a).

6.     This Court has personal jurisdiction over Fellowes as, it solicits, transacts, and is regularly doing business within California and this District.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and/or 1400(b).

## **FACTS**

8.     On May 30, 2007, attorneys for Fellowes sent Aurora a cease and desist letter alleging that Aurora's shredders marketed under the Touchguard name incorporated Fellowes' Safe Sense® technology which is allegedly the subject of U.S. Patent Publication Nos. 2006-0054725 A1 and 2006-0054724 A1 (which issued into the '276 Patent).  The letter demanded that Aurora cease sales of the allegedly infringing shredders prior to the time the patent issued.  A true and correct copy of this letter is attached as Exhibit 2.

**COMPLAINT**

9. On June 8, 2007, Tai-Hoon Matlin, one of the '276 Patent's inventors, declared in a second declaration to the PTO, that Aurora shredder Model No. AS1019CS was covered by each and every limitation of at least claims 1, 5, and 6 of the present application (which issued into the '276 Patent). A true and correct copy of the Second Declaration of Tai-Hoon Matlin is attached as Exhibit 3 ("Second Matlin Declaration").

10. Fellowes incorporated the Second Matlin Declaration into its August 2, 2007 Request for Reconsideration submitted to the PTO, using it to overcome an obviousness objection as "additional evidence of non-obviousness," specifically "copying and adoption of invention by others." See "Remarks" section of Request for Reconsideration at p. 25-26, a true and correct copy of which is attached as Exhibit 4.

### First Cause of Action
### (Declaratory Judgment of Non-Infringement)

11. Aurora repeats and realleges paragraphs 1 through 10 as though fully set forth herein.

12. Fellowes has claimed that Aurora's shredding products including Aurora shredder Model No. AS1019CS infringe the '276 Patent and has demanded that Aurora cease and desist offering to sell these products in the United States.

13. An actual, present, and justiciable controversy has arisen between Fellowes and Aurora concerning Aurora's right to sell its shredding products including Aurora shredder Model No. AS1019CS in the United States.

14. Aurora seeks declaratory judgment from this Court that its shredding products including Aurora shredder Model No. AS1019CS do not infringe the '276 Patent.

**COMPLAINT**

## Second Cause of Action

## (Declaratory Judgment of Invalidity)

15. Aurora repeats and realleges paragraphs 1 through 14 as though fully set forth herein.

16. Fellowes claim that the '276 Patent is valid and enforceable, while Aurora believes the '276 Patent is invalid and unenforceable.

17. An actual, present, and justiciable controversy has arisen between Fellowes and Aurora concerning the validity and enforceability of the '276 Patent.

18. Aurora seeks declaratory judgment from this Court that the '276 Patents is invalid and unenforceable.


## PRAYER FOR RELIEF

WHEREFORE, Aurora requests that the Court grant the following relief:

A. A declaratory judgment against Fellowes that Aurora's shredding products including Aurora shredder Model No. AS1019CS do not infringe the '276 Patent;

B. A declaratory judgment against Fellowes that the '276 Patent is invalid and unenforceable;

C. Attorneys' fees;

D. Costs; and

E. For such other and further relief as the Court may deem proper.

Dated: December 26, 2007

WANG, HARTMANN & GIBBS
A Professional Law Corporation

By: _____
Richard F. Cauley
Franklin E. Gibbs
Erick P. Wolf
Attorneys for Plaintiff

- 4 -

COMPLAINT

1

## DEMAND FOR JURY TRIAL

2

    Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal

3

Rules of Civil Procedure.

4

5

Dated: December 26, 2007

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WANG, HARTMANN & GIBBS
A Professional Law Corporation

By: _____

Richard F. Cauley
Franklin E. Gibbs
Erick P. Wolf
Attorneys for Plaintiff

**COMPLAINT**

# Exhibit 1

Exhibit 1

US007311276B2

(12) **United States Patent** (10) Patent No.: **US 7,311,276 B2**

Matlin et al. (45) Date of Patent: **Dec. 25, 2007**

(54) **SHREDDER WITH PROXIMITY SENSING SYSTEM**

(75) Inventors: **Taihoon K Matlin**, Round Lake Beach, IL (US); **Eric Gach**, Mount Prospect, IL (US)

(73) Assignee: **Fellowes Inc.**, Itasca, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 17 days.

(21) Appl. No.: **10/937,304**

(22) Filed: **Sep. 10, 2004**

(65) **Prior Publication Data**

US 2006/0054724 A1 Mar. 16, 2006

(51) Int. Cl.
A01F 21/00 (2006.01)
B02C 23/00 (2006.01)
B23Q 11/00 (2006.01)
(52) U.S. Cl. ...................................... 241/37.5; 241/236
(58) Field of Classification Search ............... 241/37.5, 241/236
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,619,537 A | 11/1971 | Nara et al. | |
| 3,764,819 A | 10/1973 | Muller | |
| 3,829,850 A | 8/1974 | Guetersloh | |
| 3,947,734 A * | 3/1976 | Fyler ............................ 361/181 |
| 4,352,980 A | 10/1982 | Hibari | |
| 4,683,381 A | 7/1987 | Dufoug | |
| 5,081,406 A | 1/1992 | Hughes et al. | |
| 5,166,679 A | 11/1992 | Vranish et al. | |
| 5,186,398 A | 2/1993 | Vigneaux, Jr. | |
| 5,345,138 A | 9/1994 | Mukaidono et al. | |
| 5,397,890 A | 3/1995 | Schueler et al. | |
| 5,494,229 A | 2/1996 | Rokos | |
| 5,850,342 A | 12/1998 | Nakamura et al. | |

| | | | |
|---|---|---|---|
| D412,716 S | 8/1999 | Kroger | |
| 5,942,975 A | 8/1999 | Sorensen | |
| 6,065,696 A | 5/2000 | Tsai | |
| 6,079,645 A * | 6/2000 | Henreckson et al. ........ 241/37.5 |
| 6,265,682 B1 | 7/2001 | Lee | |
| 6,376,939 B1 | 4/2002 | Suzuki et al. | |
| 6,418,004 B1 | 7/2002 | Mather et al. | |
| 6,655,943 B1 * | 12/2003 | Peterson et al. ............. 425/114 |
| 6,676,460 B1 | 1/2004 | Motsenbocker | |
| 6,724,324 B1 * | 4/2004 | Lambert ........................ 341/33 |
| 6,813,983 B2 | 11/2004 | Gass et al. | |
| 6,826,988 B2 | 12/2004 | Gass et al. | |
| 6,857,345 B2 | 2/2005 | Gass et al. | |
| 6,877,410 B2 | 4/2005 | Gass et al. | |
| 6,880,440 B2 | 4/2005 | Gass et al. | |

(Continued)

FOREIGN PATENT DOCUMENTS

DE 33 13 232 10/1984

(Continued)

OTHER PUBLICATIONS

SEM Advertisement for LK-3 Automatic Oiling System.

(Continued)

*Primary Examiner*—Bena Miller
(74) *Attorney, Agent, or Firm*—Pillsbury Winthrop Shaw Pittman LLP

(57) **ABSTRACT**

The present invention relates to a shredder that includes a proximity sensing system to sense the presence of a person, animal, or object near cutting elements of the shredder.

**114 Claims, 9 Drawing Sheets**



# US 7,311,276 B2
Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,920,814 B2 | 7/2005 | Gass et al. | |
| 6,979,813 B2 * | 12/2005 | Avril | 250/221 |
| 7,040,559 B2 | 5/2006 | Matlin et al. | |
| 2002/0017175 A1 | 2/2002 | Gass et al. | |
| 2002/0017176 A1 | 2/2002 | Gass et al. | |
| 2002/0017178 A1 | 2/2002 | Gass et al. | |
| 2002/0017179 A1 | 2/2002 | Gass et al. | |
| 2002/0017180 A1 | 2/2002 | Gass et al. | |
| 2002/0017181 A1 | 2/2002 | Gass et al. | |
| 2002/0017182 A1 | 2/2002 | Gass et al. | |
| 2002/0017184 A1 | 2/2002 | Gass et al. | |
| 2002/0017336 A1 | 2/2002 | Gass et al. | |
| 2002/0020261 A1 | 2/2002 | Gass et al. | |
| 2002/0020262 A1 | 2/2002 | Gass et al. | |
| 2002/0020263 A1 | 2/2002 | Gass et al. | |
| 2002/0020265 A1 | 2/2002 | Gass et al. | |
| 2002/0020271 A1 | 2/2002 | Gass et al. | |
| 2002/0056348 A1 | 5/2002 | Gass et al. | |
| 2002/0056349 A1 | 5/2002 | Gass et al. | |
| 2002/0056350 A1 | 5/2002 | Gass et al. | |
| 2002/0059853 A1 | 5/2002 | Gass et al. | |
| 2002/0059854 A1 | 5/2002 | Gass et al. | |
| 2002/0059855 A1 | 5/2002 | Gass et al. | |
| 2002/0066346 A1 | 6/2002 | Gass et al. | |
| 2002/0069734 A1 | 6/2002 | Gass et al. | |
| 2002/0170399 A1 | 11/2002 | Gass et al. | |
| 2002/0170400 A1 | 11/2002 | Gass | |
| 2002/0190581 A1 | 12/2002 | Gass et al. | |
| 2003/0002942 A1 | 1/2003 | Gass et al. | |
| 2003/0005588 A1 | 1/2003 | Gass et al. | |
| 2003/0015253 A1 | 1/2003 | Gass et al. | |
| 2003/0019341 A1 | 1/2003 | Gass et al. | |
| 2003/0020336 A1 | 1/2003 | Gass et al. | |
| 2003/0037651 A1 | 2/2003 | Gass et al. | |
| 2003/0056853 A1 | 3/2003 | Gass et al. | |
| 2003/0058121 A1 | 3/2003 | Gass et al. | |
| 2003/0090224 A1 | 5/2003 | Gass et al. | |
| 2003/0131703 A1 | 7/2003 | Gass et al. | |
| 2003/0140749 A1 | 7/2003 | Gass et al. | |
| 2003/0196824 A1 | 10/2003 | Gass et al. | |
| 2004/0008122 A1 * | 1/2004 | Michael | 340/686.1 |
| 2004/0040426 A1 | 3/2004 | Gass et al. | |
| 2004/0163514 A1 | 8/2004 | Gass et al. | |
| 2004/0173430 A1 | 9/2004 | Gass | |

| | | |
|---|---|---|
| 2004/0194594 A1 | 10/2004 | Dils et al. |
| 2004/0226800 A1 | 11/2004 | Pierga et al. |
| 2005/0039586 A1 | 2/2005 | Gass et al. |
| 2005/0039822 A1 | 2/2005 | Gass et al. |
| 2005/0041359 A1 | 2/2005 | Gass |
| 2005/0066784 A1 | 3/2005 | Gass |
| 2005/0103510 A1 | 5/2005 | Gass et al. |
| 2005/0139051 A1 | 6/2005 | Gass et al. |
| 2005/0139056 A1 | 6/2005 | Gass et al. |
| 2005/0139057 A1 | 6/2005 | Gass et al. |
| 2005/0139058 A1 | 6/2005 | Gass et al. |
| 2005/0139459 A1 | 6/2005 | Gass et al. |
| 2005/0155473 A1 | 7/2005 | Gass |
| 2005/0166736 A1 | 8/2005 | Gass et al. |
| 2006/0091247 A1 | 5/2006 | Matlin |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 86 19 856.4 | 10/1988 |
| DE | 41 21 330 | 1/1993 |
| EP | 855 221 A | 7/1998 |
| JP | 52-11691 | 1/1977 |
| JP | 57-76734 | 5/1982 |
| JP | 04-157093 | 5/1992 |
| JP | 040180852 | 6/1992 |
| JP | 6-277548 | 10/1994 |
| JP | 7-299377 | 11/1995 |
| JP | 9-262491 | 10/1997 |
| JP | 11-216383 | 8/1999 |
| JP | 20000346288 | 12/2000 |
| JP | 2004321993 | 11/2004 |
| WO | WO2005070553 | 8/2005 |

## OTHER PUBLICATIONS

Advertisement for Auto-Lube.
1st Paper Shredder—Advertisement for DAHLE Automatic Oiler/ Paper Shredder Oiling Accessory.
Instructions for Installing a Shredder Oiling System from www. compax.com.
Full-Size Picture of Shredder with LK-3 Oiling System.
International Search Report and Written Opinion for PCT/US2005/ 028290 dated Nov. 21, 2005.
Ti's Digital Signal Controllers Put Brake On SawStop Table Saw, Feb. 9, 2005, pp. 1-3 (printed from www.embeddedstar.com/press/ content/2005/2/embedded17827.html).

* cited by examiner



*FIG. 1*



FIG. 2



*FIG. 3*



FIG. 4



FIG. 5

Case 2:07-cv-08306-GEK-ALW Document 16-2 Filed 11/26/2007 Page 4 of 42



FIG. 6



FIG. 7



FIG. 8



FIG. 9

US 7,311,276 B2

1

# SHREDDER WITH PROXIMITY SENSING SYSTEM

## FIELD OF THE INVENTION

The present invention relates to shredders for destroying articles, such as documents, CDs, etc.

## BACKGROUND OF THE INVENTION

Shredders are well known devices for destroying articles, such as documents, CDs, floppy disks, etc. Typically, users purchase shredders to destroy sensitive articles, such as credit card statements with account information, documents containing company trade secrets, etc.

A common type of shredder has a shredder mechanism contained within a housing that is removably mounted atop a container. The shredder mechanism typically has a series of cutter elements that shred articles fed therein and discharge the shredded articles downwardly into the container. It is generally desirable to prevent a person's or animal's body part from contacting these cutter elements during the shredding operation.

The present invention endeavors to provide various improvements over known shredders.

## SUMMARY OF THE INVENTION

One aspect of the present invention provides a shredder comprising a housing, a shredder mechanism including a motor and cutter elements, a proximity sensor, and a controller. The shredder mechanism enables articles to be shredded to be fed into the cutter elements, and the motor is operable to drive the cutter elements so that the cutter elements shred the articles fed therein.

The housing has an opening enabling articles to be fed therethrough into the cutter elements of the shredder mechanism for shredding. The proximity sensor is located adjacent the opening and configured to indicate the presence of a person or animal in proximity to the opening. The controller is operable to perform a predetermined operation (e.g., to disable the shredder mechanism) responsive to the indicated presence of the person or animal.

Another aspect of the invention provides a shredder with a proximity sensor that includes an electroconductive element and circuitry to sense a state of the electroconductive element. The proximity sensor is configured to indicate a change in the state of the electroconductive element corresponding to a change in capacitance caused by a person or animal approaching in proximity to the electroconductive element. A controller of the shredder is operable to perform a predetermined operation responsive to the indicated change in the state of the electroconductive element.

Other objects, features, and advantages of the present invention will become apparent from the following detailed description, the accompanying drawings, and the appended claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a shredder constructed in accordance with an embodiment of the present invention;

FIG. 2 is an exploded perspective view of the shredder of FIG. 1;

FIG. 3 is a perspective view of a shredder constructed in accordance with an embodiment of the present invention;

2

FIGS. 4-7 are cross-sectional views each showing a shredder housing, opening, cutting elements, and conductor configuration for a sensor in accordance with various embodiments of the present invention; and

FIGS. 8 and 9 illustrate example capacitive sensor circuits according to respective embodiments of the present invention.

## DETAILED DESCRIPTION OF THE ILLUSTRATED EMBODIMENTS

FIGS. 1 and 2 illustrate a shredder constructed in accordance with an embodiment of the present invention. The shredder is generally indicated at 10. The shredder 10 sits atop a waste container, generally indicated at 12, which is formed of molded plastic or any other material. The shredder 10 illustrated is designed specifically for use with the container 12, as the shredder housing 14 sits on the upper periphery of the waste container 12 in a nested relation. However, the shredder 10 may also be designed so as to sit atop a wide variety of standard waste containers, and the shredder 10 would not be sold with the container. Likewise, the shredder 10 could be part of a large freestanding housing, and a waste container would be enclosed in the housing. An access door would provide for access to and removal of the container. Generally speaking, the shredder 10 may have any suitable construction or configuration and the illustrated embodiment is not intended to be limiting in any way.

The shredder 10 includes a shredder mechanism 16 including an electrically powered motor 18 and a plurality of cutter elements (not shown). "Shredder mechanism" is a generic structural term to denote a device that shreds articles using cutter elements. Such shredding may be done in any particular way. The cutter elements are mounted on a pair of parallel rotating shafts (not shown). The motor 18 operates using electrical power to rotatably drive the shafts and the cutter elements through a conventional transmission 23 so that the cutter elements shred articles fed therein. The shredder mechanism 16 may also include a sub-frame 21 for mounting the shafts, the motor 18, and the transmission 23. The operation and construction of such a shredder mechanism 16 are well known and need not be described herein in detail. Generally, any suitable shredder mechanism 16 known in the art or developed hereafter may be used.

The shredder 10 also includes the shredder housing 14, mentioned above. The shredder housing 14 includes top wall 24 that sits atop the container 12. The top wall 14 is molded from plastic and an opening 26 is located at a front portion thereof. The opening 26 is formed in part by a downwardly depending generally U-shaped member 28. The U-shaped member 28 has a pair of spaced apart connector portions 27 on opposing sides thereof and a hand grip portion 28 extending between the connector portions 27 in spaced apart relation from the housing 14. The opening 26 allows waste to be discarded into the container 12 without being passed through the shredder mechanism 16, and the member 28 may act as a handle for carrying the shredder 10 separate from the container 12. As an optional feature, this opening 26 may be provided with a lid, such as a pivoting lid, that opens and closes the opening 26. However, this opening in general is optional and may be omitted entirely. Moreover, the shredder housing 14 and its top wall 24 may have any suitable construction or configuration.

The shredder housing 14 also includes a bottom receptacle 30 having a bottom wall, four side walls and an open top. The shredder mechanism 16 is received therein, and the receptacle 30 is affixed to the underside of the top wall 24

US 7,311,276 B2

3

by fasteners. The receptacle 30 has an opening 32 in its bottom wall through which the shredder mechanism 16 discharges shredded articles into the container 12.

The top wall 24 has a generally laterally extending opening 36 extending generally parallel and above the cutter elements. The opening 36, often referred to as a throat, enables the articles being shredded to be fed into the cutter elements. As can be appreciated, the opening 36 is relatively narrow, which is desirable for preventing overly thick items, such as large stacks of documents, from being fed into cutter elements, which could lead to jamming. The opening 36 may have any configuration.

The top wall 24 also has a switch recess 38 with an opening therethrough. An on/off switch 42 includes a switch module (not shown) mounted to the top wall 24 underneath the recess 38 by fasteners, and a manually engageable portion 46 that moves laterally within the recess 38. The switch module has a movable element (not shown) that connects to the manually engageable portion 46 through the opening 40. This enables movement of the manually engageable portion 46 to move the switch module between its states.

In the illustrated embodiment, the switch module connects the motor 18 to the power supply (not shown). Typically, the power supply will be a standard power cord 44 with a plug 48 on its end that plugs into a standard AC outlet. The switch 42 is movable between an on position and an off position by moving the portion 46 laterally within the recess 38. In the on position, contacts in the switch module are closed by movement of the manually engageable portion 46 and the movable element to enable a delivery of electrical power to the motor 18. In the off position, contacts in the switch module are opened to disable the delivery of electric power to the motor 18.

As an option, the switch 42 may also have a reverse position wherein contacts are closed to enable delivery of electrical power to operate the motor 18 in a reverse manner. This would be done by using a reversible motor and applying a current that is of a reverse polarity relative to the on position. The capability to operate the motor 18 in a reversing manner is desirable to move the cutter elements in a reversing direction for clearing jams. In the illustrated embodiment, in the off position the manually engageable portion 46 and the movable element would be located generally in the center of the recess 38, and the on and reverse positions would be on opposing lateral sides of the off position.

Generally, the construction and operation of the switch 42 for controlling the motor 42 are well known and any construction for such a switch 42 may be used.

The top cover 24 also includes another recess 50 associated with a switch lock 52. The switch lock 52 includes a manually engageable portion 54 that is movable by a user's hand and a locking portion (not shown). The manually engageable portion 54 is seated in the recess 50 and the locking portion is located beneath the top wall 24. The locking portion is integrally formed as a plastic piece with the manually engageable portion 54 and extends beneath the top wall 24 via an opening formed in the recess 50.

The switch lock 52 causes the switch 42 to move from either its on position or reverse position to its off position by a camming action as the switch lock 52 is moved from a releasing position to a locking position. In the releasing position, the locking portion is disengaged from the movable element of the switch 42, thus enabling the switch 42 to be moved between its on, off, and reverse positions. In the locking position, the movable element of the switch 42 is

4

restrained in its off position against movement to either its on or reverse position by the locking portion of the switch lock 52.

Preferably, but not necessarily, the manually engageable portion 54 of the switch lock 52 has an upwardly extending projection 56 for facilitating movement of the switch lock 52 between the locking and releasing positions.

One advantage of the switch lock 52 is that, by holding the switch 42 in the off position, to activate the shredder mechanism 16 the switch lock 52 must first be moved to its releasing position, and then the switch 42 is moved to its on or reverse position. This reduces the likelihood of the shredder mechanism 16 being activated unintentionally.

In the illustrated embodiment, the shredder housing 14 is designed specifically for use with the container 12 and it is intended to sell them together. The upper peripheral edge 60 of the container 12 defines an upwardly facing opening 62, and provides a seat 61 on which the shredder 10 is removably mounted. The seat 61 includes a pair of pivot guides 64 provided on opposing lateral sides thereof. The pivot guides 64 include upwardly facing recesses 66 that are defined by walls extending laterally outwardly from the upper edge 60 of the container 12. The walls defining the recesses 66 are molded integrally from plastic with the container 12, but may be provided as separate structures and formed from any other material. At the bottom of each recess 66 is provided a step down or ledge providing a generally vertical engagement surface 68. This step down or ledge is created by two sections of the recesses 66 being provided with different radii.

The shredder 10 has a proximity sensor to detect the presence of a person or thing (e.g., animal or inanimate object) in proximity to the opening 36. A person or thing is "in proximity" to the opening 36 when a part thereof is outside and adjacent to the opening 36 or at least partially within the opening 36. The proximity sensor may be implemented in various ways, such as is described in further detail below. For further examples of shredders on which a proximity sensor may be used, reference may be made to U.S. patent application Ser. No. 10/828,254 (filed Apr. 21, 2004), Ser. No. 10/815,761 (filed Apr. 2, 2004), and Ser. No. 10/347,700 (filed Jan. 22, 2003), each of which is hereby incorporated into the present application by reference. Generally, the proximity sensor may be used with any type of shredder, and the examples identified herein are not intended to be limiting.

FIG. 3 is a perspective view of a shredder 100 constructed in accordance with an embodiment of the present invention. The shredder 100 incorporates a capacitive sensor. The illustrated capacitive sensor is a switch that detects the presence of a person or thing without requiring physical contact. The capacitive sensor includes a conductor/contact plate 112 connected to a circuit, such as those shown in FIGS. 8 and 9. The conductor 112 serves as the first plate of a capacitor, while the person or thing to be detected serves as the second plate thereof. As the distance between the conductor 112 and the person or thing decreases, the mutual capacitance therebetween increases. This increase in capacitance results in increased signal levels in the sensor, which levels can be used to detect the proximity of the person or thing.

It is to be appreciated that capacitance depends in part on the dielectric constant of the second plate of a capacitor. A higher dielectric constant translates into a larger capacitance. Therefore, the capacitive sensor of the shredder 100 can detect the proximity of a nearby animate or inanimate entity provided that its respective dielectric constant is

5

sufficiently high. Because human beings and various animals have relatively high dielectric constants, they are detectable by the capacitive sensor. Inanimate objects with relatively high dielectric constants also are detectable. Conversely, objects with low or moderate dielectric constants, such as paper, are not detectable.

The shredder 100 includes a shredder housing 104, an opening 108, and a control switch 128 with on, off, and reverse positions. A shredder mechanism, such as the one described above, is located beneath the opening 108 so that documents can be fed into the shredder mechanism through the opening 108.

The conductor 112 can be, for example, a strip of metal, foil tape (e.g., copper tape), conductive paint, a silk-screened conductive ink pattern, or another suitable conductive material. As shown in FIG. 3, the conductor 112 is a 9-inch by 1-inch capacitive sensing strip that is affixed to the housing 104 near the opening 108. As such, when a person or thing nears the opening 108 and thus the cutter elements of the shredding mechanism of the shredder 100, the capacitance between the conductor 112 and the person or thing increases, resulting in an increase in the signal level used for detection, as will be described below. To ensure that the switch is sensitive enough to detect the person or thing through multiple sheets of paper, the conductor 112 extends into the opening 108 to increase the overall surface area of the conductor 112 and thus the amount of capacitance between the conductor 112 and the nearby person or thing. The conductor 112 optionally can be covered by non-conductive plastic, for example, thus concealing the switch from a user of the shredder 100. In addition, to increase sensitivity of the switch, such non-conductive plastic can be covered with a conductive material, such as metal foil.

Though not illustrated in FIG. 3, the shredder 100 can include a sensor light, an error light, and/or a light indicative of normal operation. The sensor light, which can be an LED, is illuminated when a person or thing is detected. The error light, which also can be an LED, is illuminated when a person or thing is detected, and optionally under other conditions (e.g., the shredder container is not properly engaged with the shredder 100, or the shredder mechanism has become jammed). These lights, however, are not necessary, and are only optional features.

FIGS. 4-7 are cross-sectional views each showing a shredder housing 104, opening 108, cutting elements 132, and a conductor configuration for a sensor in accordance with various embodiments of the present invention. The conductor configurations can include conductor(s) of different areas to tailor the amount of capacitance and thus the signal level produced when a person or thing nears the shredder. Where multiple conductors are employed, the distance therebetween may be designed also to tailor the amount of capacitive coupling and thus the capacitance produced.

In FIG. 4, the conductor 136 comprises a conductive material embedded within the upper wall of the housing 104 beneath the upper surface partially into the opening 108. The conductor 136 also is optionally embedded in the wall defining the opening 108 and extends along it for a portion.

In FIG. 5, the conductive material of the conductor 140 covers an upper surface portion of the housing 104, extends substantially into the opening 108, and curves around a flange of the housing 104 so as to cover an inside surface portion of the housing 104. For a conductor 140 that has a noticeable amount of thickness, the top portion of the upper surface where the conductor 140 is mounted may be recessed.

6

The conductor 144 of FIG. 6 includes two conductive portions respectively affixed to outside and inside surface portions of the housing 104. Such use of multiple portions increases the surface area of the capacitor, as well as the capacitive coupling, capacitance, and signal level produced when a person or thing nears the conductive portions.

The conductor 148 of FIG. 7 comprises a conductive material on an inside surface portion of the housing 104. This is desirable for concealing the conductor 148 without adding the manufacturing step of embedding the conductor in a housing wall, such as is shown in FIG. 4. It is to be appreciated that the conductors of FIGS. 4-7 may be of any suitable configuration, and the examples illustrated are in no way intended to be limiting.

A conductor or conductive material such as described above in connection with FIGS. 3-7 is typically connected to circuitry on a circuit board. FIGS. 8 and 9 illustrate example capacitive sensor circuits according to respective embodiments of the present invention. The example circuits may be incorporated into the overall circuit design of a shredder, and are in no way intended to be limiting.

In FIG. 8, the capacitive sensor circuit 260 includes a conductor 300 that can have a configuration such as shown above or another suitable configuration. The conductor 300 is connected to a pad P8, which is in turn connected to circuit loops including capacitors C8 and C9, resistors R31, R32, and R36, and a high-speed double diode D8. The loops are connected to a voltage supply Vcc, circuit ground, and a resistor R33. The voltage supply Vcc is connected to the AC line voltage of the shredder, and a negative regulator can generate −5 volts for the circuit ground. The capacitive sensor output 320 may be in turn coupled as an input to a controller 330, such as a microprocessor or discrete circuit components (e.g., comparators, transistors), which takes appropriate action in response to signal levels at the output 320. Such a controller 330 may also be a relay switch that opens to disable the delivery of power to an element (e.g., the motor of the shredder mechanism) and closes to enable the delivery of power. It is to be appreciated that "controller" is a generic structural term that denotes structure(s) that control one or more modules, devices, and/or circuit components.

The principles of operation of the circuit 260 will be readily understood by those conversant with the art. When a person or thing moves close to the conductor 300, the increased capacitance therebetween causes the amplitude of the sinusoidal waveform at the output 320 to increase by a voltage sufficient to indicate the presence of the person or thing. Based on the increased signal level, the controller 330 can, for example, disable the cutting elements of the shredder, illuminate a sensor or error light, and/or activate an audible alert.

FIG. 9 illustrates a capacitive sensor circuit 360, as well as control and illumination circuitry 365. The capacitive sensor circuit 360 includes a conductor 400 that can have a configuration such as shown above or another suitable configuration. The conductor 400 is connected to a pad P1, which is in turn connected to series resistors R19 and R20. The resistor R19 is connected to circuit loops including a capacitor C4, a resistor R16, and a high-speed double diode D1. The loops are connected to a voltage supply Vcc, circuit ground, and a resistor R17. The voltage supply Vcc is connected to the AC line voltage of the shredder, and a negative regulator can generate −5 volts for the circuit ground. The capacitive sensor output 420 is coupled as an input to a controller 430, which can be, for example, a

7

simple analog circuit or an ATtiny11 8-bit microcontroller offered by Atmel Corporation (San Jose, Calif.).

The principles of operation of the circuitry of FIG. 9 will be readily understood by those conversant with the art. When a person or thing moves close to the conductor 400, the increased capacitance therebetween causes the amplitude of the sinusoidal waveform at the output 420 to increase by a voltage sufficient to indicate the presence of the person or thing. Based on the increased signal level, the controller 430 sends appropriate control signals. For example, the controller 430 sends a control signal 490 to cut off power (such as supplied by a triac) to the motor that drives the cutting elements of the shredder, and a control signal 435 to illuminate a sensor LED 450 or error LED 440 coupled to comparators 460.

Embodiments of the present invention may be incorporated, for instance, in a shredder such as the PS80C-2 shredder of Fellowes, Inc. (Itasca, Ill.). If desired, existing shredder designs may be adapted, without major modification of existing modules, to incorporate proximity sensing circuitry.

In another embodiment of the invention, a shredder can provide two or more sensitivity settings for proximity sensing. The settings can be selectably enabled by a user and tailored to detect, e.g., infants or pets. In an example embodiment employing a capacitive sensor, objects are distinguished based on load times. A smaller capacitive load results in a shorter load time than a large capacitance. Thus, by measuring (e.g., with a microprocessor) differences in load times resulting from capacitive loads near a sensor, various objects can be distinguished.

Although various illustrated embodiments herein employ capacitive sensors, it is to be noted that other approaches may be employed to detect the presence of a person or thing near a shredder, such as, for example, approaches utilizing eddy current, inductive, photoelectric, ultrasonic, Hall effect, or infrared proximity sensor technologies.

The foregoing illustrated embodiments have been provided to illustrate the structural and functional principles of the present invention and are not intended to be limiting. To the contrary, the present invention is intended to encompass all modifications, alterations and substitutions within the spirit and scope of the appended claims.

What is claimed is:

1. A document shredder for shredding one or more data bearing documents selected from the group consisting of paper, optical discs, and floppy disks, comprising:

a housing;

a document shredder mechanism received in the housing and including an electrically powered motor and cutter elements, the document shredder mechanism enabling one or more data bearing documents selected from the group consisting of paper, optical discs, and floppy disks to be fed into the cutter elements and the motor being operable to drive the cutter elements so that the cutter elements shred the one or more documents fed therein;

the housing having an opening enabling the one or more data bearing documents to be fed therethrough into the cutter elements of the document shredder mechanism for shredding;

a waste bin disposed beneath the document shredder mechanism, the waste bin being configured to receive shredded documents from the document shredder mechanism, the waste bin being manually removable from beneath the document shredder mechanism for emptying of the shredded documents therein;

8

a discriminating proximity sensor comprising an electroconductive sensor element at least in part adjacent the opening, the proximity sensor being configured to indicate a presence of a person or animal, but not a presence of the one or more data bearing documents, in proximity to the opening based on the detection via the sensor element of an inherent electrical characteristic of the person or animal; and

a controller operable to disable the cutter elements responsive to the indicated presence of the person or animal.

2. A shredder according to claim 1, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

3. A shredder according to claim 1, wherein the controller is also operable to illuminate an indicator responsive to the indicated presence of the person or animal.

4. A shredder according to claim 1, wherein the controller comprises a microcontroller.

5. A shredder according to claim 1, wherein the proximity sensor is a capacitive sensor for detecting a capacitance between the sensor element and the person or animal.

6. A shredder according to claim 5, wherein:

the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

7. A shredder according to claim 6, wherein the electroconductive element is a thin metal member extending along a portion of the housing adjacent the opening.

8. A shredder according to claim 7, wherein the metal member is provided on an interior surface of the housing.

9. A shredder according to claim 8, wherein the metal member is provided only on an interior surface of the housing, and not on an exterior surface.

10. A shredder according to claim 8, wherein the metal member is also provided on an exterior surface of the housing.

11. A shredder according to claim 10, wherein the portion of the housing on which the metal member is provided has an edge that defines part of the opening, and wherein the metal member extends from the interior surface of the housing to the exterior surface over the edge.

12. A shredder according to claim 7, wherein the shredder mechanism is embedded within the housing.

13. A shredder according to claim 7, wherein the metal member is at least in part adhered to the portion of the housing adjacent the opening.

14. A shredder according to claim 13, wherein the metal member comprises metal tape.

15. A shredder according to claim 7, wherein the metal member is at least in part covered by a non-conductive member.

16. A shredder according to claim 15, wherein the non-conductive member is at least in part covered by a conductive member.

17. A shredder according to claim 6, wherein the electroconductive element at least in part comprises metal paint applied to a portion of the housing or to a member associated with the housing.

18. A shredder according to claim 6, wherein the electroconductive element includes at least two metal members each extending along a portion of the housing adjacent the opening.

19. A shredder according to claim 1, wherein the controller at least in part comprises a microprocessor.

20. A shredder according to claim 1, wherein the controller at least in part comprises discrete circuit components.

US 7,311,276 B2

9

10

21. A shredder according to claim 1, wherein the controller at least in part comprises an analog circuit.

22. A shredder according to claim 5, wherein the opening is an elongated, narrow opening.

23. A shredder according to claim 22, wherein the elongated, narrow opening is defined by a pair of opposing walls, and wherein the sensor element of the proximity sensor is attached to at least one of the walls.

24. A shredder according to claim 23, wherein the sensor element of the proximity sensor extends along the at least one of the walls for essentially an entire length of the opening.

25. A shredder according to claim 23, wherein the sensor element extends along both of the walls.

26. A shredder according to claim 25, wherein the sensor element extends along the walls for essentially an entire length of the opening.

27. A shredder according to claim 23, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

28. A shredder according to claim 24, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

29. A shredder according to claim 25, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

30. A shredder according to claim 26, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

31. A shredder according to claim 1, wherein:
wherein the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

32. A shredder according to claim 22, wherein:
wherein the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

33. A shredder according to claim 23, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

34. A shredder according to claim 24, wherein:
wherein the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

35. A shredder according to claim 25, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

36. A shredder according to claim 26, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

37. A shredder according to claim 27, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

38. A shredder according to claim 28, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

39. A shredder according to claim 29, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

40. A shredder according to claim 30, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

41. A shedder according to claim 1, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

42. A shredder according to claim 22, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

43. A shredder according to claim 23, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

44. A shredder according to claim 24, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

45. A shredder according to claim 25, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

46. A shredder according to claim 26, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

47. A shredder according to claim 27, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

48. A shredder according to claim 28, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

49. A shredder according to claim 29, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

50. A shredder according to claim 30, wherein the proximity sensor is configured to indicate the presence of the person or the animal in proximity to the opening without requiring contact with the sensor element.

51. A shredder according to claim 41, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

52. A shredder according to claim 42, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

53. A shredder according to claim 43, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

54. A shredder according to claim 44, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

55. A shredder according to claim 45, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

56. A shredder according to claim 46, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

57. A shredder according to claim 47, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

58. A shredder according to claim 48, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

59. A shredder according to claim 49, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

60. A shredder according to claim 50, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

61. A shredder according to claim 6, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

11

62. A shredder according to claim 22, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

63. A shredder according to claim 23, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

64. A shredder according to claim 24, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

65. A shredder according to claim 25, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

66. A shredder according to claim 26, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

67. A shredder according to claim 31, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

68. A shredder according to claim 32, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

69. A shredder according to claim 33, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

70. A shredder according to claim 34, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

71. A shredder according to claim 35, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

72. A shredder according to claim 36, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

73. A shredder according to claim 41, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

74. A shredder according to claim 42, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

75. A shredder according to claim 43, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

76. A shredder according to claim 44, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

77. A shredder according to claim 45, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

78. A shredder according to claim 46, wherein the cutter elements are disabled by disabling power to the motor responsive to the indicated presence of the person or animal.

79. A shredder according to claim 5, wherein the opening is an elongated opening.

80. A shredder according to claim 79, wherein the elongated opening is defined by a pair of opposing walls, and wherein the sensor element of the proximity sensor is attached to at least one of the walls.

81. A shredder according to claim 80, wherein the sensor element of the proximity sensor extends along the at least one of the walls for essentially an entire length of the opening.

82. A shredder according to claim 80, wherein the sensor element extends along both of the walls.

83. A shredder according to claim 82, wherein the sensor element extends along the walls for essentially an entire length of the opening.

12

84. A shredder according to claim 80, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

85. A shredder according to claim 81, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

86. A shredder according to claim 82, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

87. A shredder according to claim 83, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

88. A shredder according to claim 79, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

89. A shredder according to claim 80, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

90. A shredder according to claim 81, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

91. A shredder according to claim 82, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

92. A shredder according to claim 83, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

93. A shredder according to claim 84, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

94. A shredder according to claim 85, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

95. A shredder according to claim 86, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

96. A shredder according to claim 87, wherein:
the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element.

97. A shredder according to claim 1, wherein the opening is an elongated, narrow opening.

98. A shredder according to claim 97, wherein the elongated, narrow opening is defined by a pair of opposing walls, and wherein the sensor element of the proximity sensor is attached to at least one of the walls.

99. A shredder according to claim 98, wherein the sensor element of the proximity sensor extends along the at least one of the walls for essentially an entire length of the opening.

100. A shredder according to claim 98, wherein the sensor element extends along both of the walls.

101. A shredder according to claim 100, wherein the sensor element extends along the walls for essentially an entire length of the opening.

102. A shredder according to claim 98, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

103. A shredder according to claim 99, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

104. A shredder according to claim 100, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

US 7,311,276 B2

13

**105.** A shredder according to claim **101**, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

**106.** A shredder according to claim **1**, wherein the opening is an elongated opening.

**107.** A shredder according to claim **106**, wherein the elongated opening is defined by a pair of opposing walls, and wherein the sensor element of the proximity sensor is attached to at least one of the walls.

**108.** A shredder according to claim **107**, wherein the sensor element of the proximity sensor extends along the at least one of the walls for essentially an entire length of the opening.

**109.** A shredder according to claim **107**, wherein the sensor element extends along both of the walls.

**110.** A shredder according to claim **109**, wherein the sensor element extends along the walls for essentially an entire length of the opening.

14

**111.** A shredder according to claim **107**, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

**112.** A shredder according to claim **108**, wherein the sensor element is provided on an external surface of the at least one of the walls and thereby defines the opening at least in part.

**113.** A shredder according to claim **109**, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

**114.** A shredder according to claim **110**, wherein the sensor element is provided on an external surface of both the walls and thereby defines the opening at least in part.

* * * * *

# Exhibit 2

Exhibit 2

**Pillsbury
Winthrop
Shaw
Pittman**

1650 Tysons Boulevard        Tel 703.770.7900
McLean, VA 22102-4859        Fax 703.770.7901
                             www.pillsburylaw.com

May 30, 2007

Bryan P. Collins
Phone: 703.770.7538
bryan.collins@pillsburylaw.com

*VIA FACSIMILE*

Donn Harms, Esq.
American Patent and Trademark Law Center
12702 Via Cortina, Suite 100
Del Mar, California 92014

      Re:    Aurora Infringements
            Our Ref.: 082135-0000042

Dear Mr. Harms:

I have still not received a substantive response to my e-mail of March 14, 2007, setting forth a royalty proposal from Fellowes, and my follow-up e-mail of March 27, 2007. On March 28th you indicated by e-mail that a response was forthcoming, but we have not heard from you since then. It has been over two months since Fellowes made its proposal, and we need an immediate response.

You should be aware that, since that time, Fellowes tried the '559 patent to a jury verdict against shredders sold by Michilin Prosperity Co. Ltd. of Taiwan and Intek America of Torrance, CA. The '559 patent was found to be infringed and valid in all respects. The switch constructions on the accused shredders in that case are the same as those Aurora shredders in all material respects, and any reasonable jury would come to the same conclusion if we were forced to litigate against Aurora. The trial also started after the Supreme Court's *KSR* decision was issued. Thus, the '559 patent was held valid under the U.S. Supreme Court's obviousness standard as set forth in that case.

We also take this opportunity to advise that Fellowes has filed the '559 patent in a number of major markets, including Europe, Canada, Japan and the People's Republic of China.

We expect a substantive and meaningful answer to this letter and Fellowes' prior royalty proposal by June 7, 2007. With respect to the $50,000 lump sum Fellowes proposed for past damages, that was premised on a rapid resolution of this issue, and therefore Fellowes expects to calculate any royalty from April 1st forward or increase the lump sum component as applicable.

If we do not receive a response in advance of that date, Fellowes will assume that Aurora has no interest in seeking an amicable resolution and will proceed accordingly.

Donn Harms, Esq.
May 30, 2007
Page 2


We also take this opportunity to advise you and your client of Fellowes' U.S. Patent Publication Nos. 2006-0054724 A1 and 2006-0054725 A1. These applications also have corresponding applications filed in other major markets, such as Europe, Canada and the People's Republic of China. And there is a Japanese counterpart application that is currently pending and under examination, JP 2006075831.

It has come to Fellowes' attention that Aurora is currently marketing shredders under the name Touchguard that incorporate Fellowes' proprietary Safe Sense® technology, which is the subject matter of those patent applications. Consider this letter as formal notice of Fellowes' Safe Sense® patent applications.

Fellowes' intellectual property is important to its business and it takes protection of that intellectual property seriously. Its Safe Sense® technology represents a significant innovation in shredder safety and a key investment in Fellowes technical and business strategy. Aurora's marketing of that technology cannot be tolerated.

If Aurora has not ceased sales of infringing shredders by the time Fellowes' patents issue, Fellowes will be in contact to discuss its right to collect retroactive pre-grant royalties and to demand cessation of such sales.

Finally, we have yet a third issue to raise with Aurora concerning a trademark infringement issue on Aurora's Touchguard shredders. The Aurora Touchguard shredders utilize a shield logo that is confusingly similar to the shield logo used on Fellowes' Safe Sense® shredders. The similarity of these logos on the same products will lead to consumer confusion as to the source of goods and cannot be tolerated by Fellowes. As such, Fellowes demands that Aurora immediately cease and desist using the shield logo on any and all Aurora shredders.

We expect a response to these other issues as well in advance of the June 7th date.

Very truly yours,

Bryan P. Collins


BPC/smm

# Exhibit 3

**Exhibit 3**



Attorney Docket: 082135-0310373
Client Reference: Dkt. 23-REG

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re PATENT APPLICATION of:                    Confirmation Number: 2014

MATLIN ET AL.

Application No.: 10/937,304                      Group Art Unit: 3725

Filed: September 10, 2004                         Examiner: Pahng, Jason Y.

Title:  SHREDDER WITH PROXIMITY SENSING SYSTEM

## SECOND DECLARATION OF TAI-HOON MATLIN UNDER 37 C.F.R. §1.132

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

I hereby declare that:

1.      I previously executed a Declaration in the above application, which was entitled "Declaration of Tai-Hoon Matlin Under 37 C.F.R. §1.132." My qualifications and experience in shredder design were explained in that previous Declaration, and that information is incorporated herein without being repeated.

2.      In my previous Declaration, I identified 3 competitive shredders that have adopted my invention. I recently became aware of yet another competitive shredder that has adopted my invention. This new shredder is made by Aurora, a well known shredder manufacturer and distributor, and bears Model No. AS1019CS ("the Aurora Shredder"). Pictures of the Aurora Shredder are included at Exhibit A.

3.      The Aurora Shredder was purchased by Fellowes personnel from Walmart in

May 2007. To the best of my knowledge, this Aurora Shredder first became available on the

marketplace in calendar year 2007.

4.      The Aurora Shredder is covered by each every limitation of at least claims 1,

5, and 6 of the present application, as presented in the Amendment filed on March 14, 2007.

5.      Specifically, I have examined the Aurora Shredder, and concluded that it is a

document shredder for shredding one or more data bearing documents selected from the

group consisting of paper, optical discs, and floppy disks. The Aurora Shredder comprises

the following elements as recited in claim 1:

a housing;

a document shredder mechanism received in the housing and including an electrically

powered motor and cutter elements, the document shredder mechanism enabling one or more

data bearing documents selected from the group consisting of paper, optical discs, and floppy

disks to be fed into the cutter elements and the motor being operable to drive the cutter

elements so that the cutter elements shred the one or more documents fed therein;

the housing having an opening enabling the one or more data bearing documents to be

fed therethrough into the cutter elements of the document shredder mechanism for shredding;

a waste bin disposed beneath the document shredder mechanism, the waste bin being

configured to receive shredded documents from the document shredder mechanism, the waste

bin being manually removable from beneath the document shredder mechanism for emptying

of the shredded documents therein;

a discriminating proximity sensor comprising an electroconductive sensor element at

least in part adjacent the opening, the proximity sensor being configured to indicate a

presence of a person or animal, but not a presence of the one or more data bearing

- 2 -

MATLIN ET AL. -- 10/937,304
Attorney Docket: 082135-0310373

documents, in proximity to the opening based on the detection via the sensor element of an

inherent electrical characteristic of the person or animal; and

a controller operable to disable the cutter elements responsive to the indicated

presence of the person or animal.

6.      In this competitive Aurora shredder the electroconductive sensor element of

the discriminating proximity sensor of claim 1 is a metal member attached on a wall of the

throat opening. This is shown in the photograph in Exhibit A marked "Aurora's Touchguard

technology (pointed at)". TouchGuard is the marketing name referring to Aurora's

implementation of my invention. This metal member has a lead portion that extends down

into the throat opening and is connected to a circuit inside the shredder. I tested this

competitive shredder, and found that it is configured to indicate a presence of a person or

animal, but not a presence of the one or more data bearing documents, in proximity to the

opening based on the detection via the sensor element of an inherent electrical characteristic

of the person or animal. This was confirmed by the fact that it responded to the detection of a

person's finger by de-activating the shredder mechanism's motor, but did not respond to the

presence of paper or discs. This examination also revealed that a controller disabled the

cutter elements responsive to the indicated presence of the person or animal.

7.      This discriminating functionality of the Aurora Shredder is confirmed by the

prominent advertising used on the Aurora Shredder packaging. That packaging states "New.

Shredding stops when touched." And their TouchGuard shield logo is placed prominently on

the shredder itself.

8.      Additionally, as recited in claim 5, in the Aurora Shredder the proximity

sensor is a capacitive sensor for detecting a capacitance between the sensor element and the

person or animal. My inspection revealed that the metal member was acting as a plate of a

- 3 -

capacitor, and that the detection of a capacitance between the coating and a body part tripped the sensor.

9.      As recited in claim 6, in the Aurora Shredder the proximity sensor further comprises circuitry to sense a state of the electroconductive sensor element. This is evident from the fact that it deactivates the motor of the shredder mechanism upon detecting the presence of a body part, but not paper, discs or credits cards appropriate for shredding.

10.     I have confirmed the facts set forth above by physically inspecting and testing a sample of the identified Aurora Shredder.

11.     It is also apparent that the TouchGuard shield logo used by Aurora is strikingly similar to Fellowes' SafeSense shield logo, which is a Fellowes trademark used on shredders incorporating my invention. I have attached side by side comparisons at Exhibit B. This leads me to believe that Aurora's adoption of my claimed invention was not coincidental, and is an effort to trade on the commercial success and recognition achieved by Fellowes with my invention sold under the SafeSense brand name.

12.     I hereby declare that all statements made herein of my knowledge are true and all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statement and the like so made are punishable by fine or imprisonment, or both, under§ 1001 of Title 18 of the United States Code and that such willful false statement may jeopardize the validity of the application or any patents issued from them.

Signed this _5TH_ day of June, 2007, at Itasca, Illinois.

_____
Tai-Hoon Matlin

- 4 -

MATLIN ET AL. — 10/937,304
Attorney Docket: 082135-0310373

**EXHIBIT A**

MATLIN ET AL. — 10/937,304
Attorney Docket: 082135-0310373

### AURORA AS1019CS WITH TOUCHGUARD



Aurora's Touchguard technology (pointed at)



Electrical component of Touchguard technology



Internal configuration of Aurora shredder



White wire controls the Touchguard technology



Free standing Aurora shredder with Touchguard



Retail box of Aurora shredder

400576247v1

MATLIN ET AL. — 10/937,304
Attorney Docket: 082135-0310373

**EXHIBIT B**

400576247v1

MATLIN ET AL. — 10/937,304
Attorney Docket: 082135-0310373





400576247v1

# Exhibit 4

**Exhibit 4**



Attorney Docket: 082135-0310373
Client Reference: Dkt. 23-REG

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re PATENT APPLICATION of:                    Confirmation Number: 2014

MATLIN ET AL.

Application No.: 10/937,304                      Group Art Unit: 3725

Filed: September 10, 2004                        Examiner: B. MILLER

Title:  SHREDDER WITH PROXIMITY SENSING SYSTEM

August 2, 2007

<u>REQUEST FOR RECONSIDERATION</u>

Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

In response to the Office Action dated May 9, 2007, please consider this Request for
Reconsideration and enter the attached Second Declaration of Tai-Hoon Matlin Under 37
C.F.R. § 1.132, and Declaration of Kathleen Noe Under 37 C.F.R. § 1.132. A Request for
Continued Examination is also being filed herewith.

400676354v1

MATLIN ET AL. – 10/937,304
Client/Matter: 082135-0310373

## REMARKS

Claims 1, 2, 4-6, 7, 12-14, 17, 19, 22-24, 27, 28, 31-34, 37, 38, 41-44, 47, 48, 51-54, 57, 58, 61-64, 67-70, 73-76, 79-81, 84, 85, 88-90, 93, 94, 96-99, 102-103, 106-108, and 111-112 are currently pending in the application. The remaining claims not set forth above have been withdrawn due to an election requirement, but have not been cancelled in anticipation that they will be allowed upon allowance of the generic independent claim 1.

No amendments have been made to the claims. Reconsideration and allowance of the present application based on the following remarks and the attached declaration evidence are respectfully requested.

### A. The Prior Art Rejection of Claim 1

The Examiner has rejected independent claim 1 as being obvious over a combination of references. In the Examiner's rejection, the base reference is Suzuki (JP 57-76734). The Examiner relies on Suzuki as teaching all the elements of the claim, except for the waste bin limitations and the fact that the proximity sensor detects via an inherent electrical characteristic. The Examiner relies on Henreckson (U.S. Patent No. 6,079,645) for the waste bin limitations. And the Examiner further relies on Ghosh to replace the IR sensor of Suzuki with a capacitive sensor.

As an initial matter the Applicants wish to correct a misstatement made by the Examiner concerning the breadth of the claim scope. The Examiner stated that "Suzuki discloses an infrared sensor as the proximity sensor, but the claim also calls for a capacitive sensor to be used as the proximity sensor." Office Action of May 9, 2007 at 4. And therefore, the Examiner relied on the capacitive sensor in Ghosh. While some of the dependent claims recite that the proximity sensor is of the capacitive type, claim 1 is not so limited. Instead, claim 1 recites "a discriminating proximity sensor comprising an electroconductive sensor element at least in part adjacent the opening, the proximity sensor being configured to indicate a presence of a person or animal, but not a presence of the one or more data bearing documents, in proximity to the opening based on the detection via the sensor element of an inherent electrical characteristic of the person or animal[.]"

Nothing in claim 1 requires the sensor to be a capacitive sensor, and other sensing technologies sensing an inherent electrical characteristic of a person or animal could be used (e.g., a resistive sensor). This still distinguishes from the IR sensor of Suzuki, which detects heat from a person or animal, and not an inherent electrical characteristic as required by claim 1. While a capacitive sensor is used in the commercial embodiment (and is specifically

- 17 -

structure. The structural elements of the invention are recited in the claims, and the declaration evidence points out the advantages achieved over the prior art. Under the Examiner's position that claim 1 must recite that the device works well in hot temperatures, then claim 1 would also have to recite all kinds of other advantages: it works even when children don't read the warning label, it works even if the distance between the throat opening the shredder mechanism is small, it works even if there is a flap and a small child learns to circumvent it, etc. Such a requirement would lead to absurdly drafted claims listing all the advantages flowing from the inventive construction. The simple fact is that the Applicants' evidence proves that the claimed invention is not obvious because of the established long-felt need for an effective solution to the problem at issue and the repeated attempts by others to solve that problem. This evidence cannot be summarily ignored, as the Examiner has done.

Accordingly, the Applicants request the Examiner to give the previously submitted long-felt need evidence and arguments their due weight in establishing that the claimed inventions are not obvious.

### 2. Copying and Adoption of Invention By Others

As additional evidence of non-obviousness, the Applicants previously submitted evidence of copying by others in the industry. *See* MPEP § 716.06. Specifically, the Applicants filed a Declaration from Taihoon Matlin that described in detail three competitive shredders that appeared on the marketplace soon after Fellowes first released its SafeSense® shredders embodying the claimed invention. *See* Original Matlin Declaration at ¶¶ 28-33 (detailing how each and every element of these claims is found in the identified shredders). And he further testified that these appeared on the marketplace only after the release of Fellowes' claimed products. *See id.* at ¶ 27.[5]

Recently, the Applicants have become aware of yet another competitive shredder from Aurora, a well known shredder manufacturer and distributor. This Aurora Shredder is discussed in detail in the attached Second Declaration of Taihoon K. Matlin Under 37 C.F.R. §1.132, which shows that it embodies the claimed invention, and specifically at least

---

[5] It is noted that Examiner Pahng did not comment at all on the Original Matlin Declaration in the last Official Action, nor did he acknowledge its receipt. In discussions with Examiner Miller, she indicated that the case may be that Examiner Pahng did not notice that the Original Matlin Declaration was not scanned into PAIR, and instead was maintained in an artifact file, because it contained color images. As such, the Applicants maintain the arguments made in their Amendment of March 14, 2007 (pgs. 36-38), and ask the Examiner to fully consider them after retrieving a copy of the Original Matlin Declaration.

MATLIN ET AL. – 10/937,304
Client/Matter: 082135-0310373

claims 1, 5, and 6. This is further evidence that the invention is being adopted by others in the industry, a long accepted objective indicia of non-obviousness. Moreover, the packaging for the Aurora Shredder prominently advertises its discriminating proximity sensor feature (referred to as TouchGuard). This adulation of the feature is also indicative of non-obviousness. *See Gambrio Lundia AB v. Baxter Healthcare Corp.*, 42 USPQ2d 1378, 1384 (Fed. Cir. 1997).

Clearly, the fact that Fellowes Safesense® shredders with the claimed invention were released first, and then all these competitive shredders incorporating the claimed invention appeared soon thereafter is indicative that these competitors were adopting Fellowes' claimed technology to benefit in the marketplace. It is critical to understand the timing of the sales of these competitive shredders in the context of the long-felt need evidence discussed above. Specifically, the long-felt need evidence submitted in this application shows that for at least three decades shredder manufacturers have been attempting to improve safety in document shredders, yet none of them had ever developed the Applicants' claimed invention. Now, after Fellowes developed its claimed invention and released the same to the marketplace, these competitive shredders have appeared right on Fellowes' coat-tails. The long-felt need evidence by itself begs the very question of obviousness: If the claimed invention were so obvious, why did wasn't it invented sooner? And the rapid adoption of the claimed invention by others begs yet another important question: If the invention is not a meritorious advancement in the shredder art, why would multiple third party competitors adopt the claimed invention immediately after its release by Fellowes? The only logical answers to these questions is that the invention is not obvious, and that it is recognized as such an improvement over the existing art that the competition rapidly sought to use the same technology invented by Fellowes. Imitation is indeed the most sincere form of flattery. *See Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co.*, 220 U.S. 428, 440-441 (1911).

That is, coupling together the evidence of long-felt need, and the copying evidence provided by the two Matlin Declarations, the strong evidence of non-obviousness in this application becomes overwhelming. First, the evidence shows that for nearly 30 years document shredder manufacturers have been attempting to improve shredder safety, yet never developed the claimed invention until the Applicants did so. This alone compels a finding of non-obviousness. Then, once the Applicants made their invention, and Fellowes' Safesense™ products embodying the claimed invention were sold to the public, the

- 26 -